**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

| | | |
|---|---|---|
| DAVID HASKELL GREEN | * | |
| #30506 | * | |
| | * | |
| Petitioner | * | |
| v. | * | No. 4:26-cv-00559-JJV |
| | * | |
| DEXTER PAYNE, Director, | * | |
| Arkansas Division of Correction | * | |
| | * | |
| Respondent | * | |

**MEMORANDUM AND ORDER**

## I. INTRODUCTION

Petitioner David Haskell Green, an Arkansas Division of Correction inmate being held at the Pope County Detention Center, brings this 28 U.S.C. § 2254 Petition for Writ of Habeas Corpus *pro se*. (Doc. No. 1.) He alleges he received ineffective assistance of counsel and his due process rights were violated in a state court proceeding to revoke his suspended imposition of sentence. (*Id*. at 3-5.) Respondent Dexter Payne, Director of the Arkansas Division of Correction, contends Mr. Green's Petition is barred by the statute of limitations, some of his claims are procedurally defaulted, and all are without merit. (Doc. No. 9.) After careful consideration, I find Mr. Green's Petition must be dismissed with prejudice and the requested relief denied.

## II. FACTS

In 2016, in the Circuit Court of Pope County, Arkansas, Mr. Green entered a negotiated plea of guilty to failure to register as a sex offender. (Doc. No. 9-13 at 124.) He was sentenced as a habitual offender to four years' imprisonment and six years' suspended imposition of sentence ("SIS"). (*Id*.) The sentencing order contained a notation that Mr. Green's SIS was conditioned

upon his "living a law-abiding life – not committing any offense punishable by imprisonment." (*Id*. at 125.) In 2021, the State of Arkansas moved to revoke Mr. Green's SIS on the basis that he had committed new criminal offenses of harassment, terroristic threatening, and disorderly conduct. (Doc. No. 9-3.) The Arkansas Court of Appeals summarized the testimony presented at the revocation hearing as follows:

> Karri McClatchey, the funeral director at Shinn Funeral Service, testified that in January 2021, the funeral home was required to enforce a mask mandate and social distancing. The mandate dictated that all persons entering the building must wear a mask. On January 21, the receptionist reported to McClatchey that a gentleman (Green) had entered the building and was not wearing a mask. McClatchey approached Green, asked him to wear a mask, and attempted to hand him a mask. She described Green as "very aggravated," and he told her that "masks [do] not work and that I could shove the mask up my ass." McClatchey, who was six months pregnant, did not want the situation to escalate further, so she left and informed the owner, Ormond Peters, of the situation. Peters attempted to speak to Green, but Green immediately began yelling at Peters and making threats. Green followed Peters to the front door and told Peters that "he was going to find out where he lived and make his life hell" and "kick [his] ass." Green also "got really close" to Peters's face and was acting aggressively but did not make physical contact. McClatchey called the police while Peters was dealing with Green. She also said Green left in a dark-colored SUV with lights around the top of the vehicle.
>
> Skyler Villeneuve, a funeral director at Shinn, witnessed the interaction between Peters and Green and confirmed that Green was "very aggressive; very intense." He also described Green's fists as "balled up." Villeneuve heard Green's statements to Peters, including calling Peters an "MF-er" and an "SOB," and Villeneuve saw Green leave in a black Chevy Trailblazer with LED lights around the roof rack.
>
> Ormond Peters testified that he approached the room that Green was in and, while standing in the doorway, indicated to Green that he needed to speak to him. According to Peters, Green jumped out of his chair, walked toward him (Peters), and said he was going to "whip [Peters's] ass." Peters described Green as "inches from my face hollering at me." Peters told Green that he had to leave, then Peters turned and walked toward the front door. Green followed him and continued to scream at him. Peters also identified Green's vehicle as a black SUV with LED lights.
>
> Three days later, Peters received a notification that a surveillance camera in front of his house had been motion activated, and he stepped outside to see Green's vehicle pulling out of his driveway. Green then circled around the end of the road,

> which was a dead end, and stopped in front of Peters's house, honked his horn, and flashed his LED lights. Peters said that he feared for his safety.
>
> Green and his mother, who had also been present at the funeral home, testified that Peters had been the initial aggressor. They described how Peters had pointed his finger in Green's face and screamed at him. Green admitted saying, "I'm going to sue you and make your life hell," which he said explains why he later drove by Peters's house to verify that he had Peters's correct physical address.

*Green v. State of Arkansas*, 2023 Ark. App. 199, 2-3. The trial court found Mr. Green had violated the conditions of his SIS and sentenced him to sixteen years' imprisonment. (Doc. No. 1 at 10-11.) The Arkansas Court of Appeals affirmed, holding the trial court did not err in finding by a preponderance of the evidence that Mr. Green had committed the offense of disorderly conduct, a violation of the conditions of his SIS. *Green*, 2023 Ark. App. 199, 6 (citing *Bennion v. State of Arkansas*, 2022 Ark. App. 290, 645 S.W.3d 37 (only one violation is necessary to support revocation)).

Through counsel, Mr. Green filed a petition for post-conviction relief pursuant to Arkansas Rule of Criminal Procedure 37. (Doc. No. 9-4.) He raised various claims of ineffective assistance, including that trial counsel should have impeached McClatchey, Villeneuve, and Peters; should have called the funeral home receptionist as a witness; and should have objected to Peters's testimony regarding his fear of Mr. Green. (*Id*. at 4-9.) The trial court denied relief without a hearing, finding Mr. Green's ineffective-assistance claims were conclusory and failed to demonstrate a reasonable probability of a different result. (Doc. No. 9-5.) The Arkansas Court of Appeals affirmed, concluding Mr. Green's claims were "conclusory assertions of prejudice from failures to highlight the kind of discrepancies that are expected even when all witnesses are telling the truth." *Green v. State of Arkansas*, 2025 Ark. App. 246, 5.

In the Petition for Writ of Habeas Corpus now before the Court, Mr. Green repeats the ineffective-assistance arguments raised in his Rule 37 petition: his counsel was ineffective for

failing to impeach McClatchey, Villeneuve, and Peters using purported discrepancies in their testimony; for failing to call the receptionist to testify about "a polite interaction" with him; and for failing to object to Peters's "improper character-based" testimony about his fear of Mr. Green. (Doc. No. 1 at 3-4.) He also raises two due-process arguments: that the dismissal of the underlying harassment, terroristic threatening, and disorderly conduct charges in state court shows that the SIS revocation was based on unreliable evidence, and counsel should have highlighted that; and that the trial court's denial of Rule 37 relief without a hearing deprived him of a full and fair opportunity to develop his claims. (*Id*. at 4-5.) For the reasons stated below, Mr. Green is not entitled to relief.

## III. ANALYSIS

### A. Time Bar

Mr. Green's Petition is technically untimely based upon the one-year period of limitation imposed by the Antiterrorism and Effective Death Penalty Act ("AEDPA"). Title 28 U.S.C. § 2244(d)(1) and (2) impose a one-year period of limitation on habeas corpus petitions:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of --
>
> > (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> >
> > (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> >
> > (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> >
> > (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d)(1)-(2).

In this case, the one-year limitation period began to run on "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). The revocation of Mr. Green's SIS was affirmed on April 12, 2023. *Green*, 2023 Ark. App. 199. The mandate issued on June 22, 2023, when the Arkansas Supreme Court denied Mr. Green's petition for review. *See State of Arkansas v. David Haskell Green*, No. 58CR-16-72, https://caseinfo.arcourts.gov. Mr. Green did not seek direct review in the United States Supreme Court; therefore, the judgment became final ninety days later, when the time for doing so expired. *See Gonzalez v. Thaler*, 565 U.S. 134, 150 (2012) (for petitioners who do not pursue direct review all the way to the United States Supreme Court, the judgment becomes final when the time for doing so expires); Sup. Ct. R. 13 (a petition for writ of certiorari is timely when filed within ninety days after entry of the state court order denying discretionary review). Accordingly, the statute of limitations began to run on September 20, 2023.

However, Mr. Green's Rule 37 petition tolled the statute of limitations in accordance with § 2244(d)(2) when it was filed on July 13, 2023, before the judgment became final. (Doc. No. 9-4.) The trial court denied Rule 37 relief on August 25, 2023 (Doc. No. 9-5), and the Arkansas Court of Appeals affirmed on April 23, 2025. *Green*, 2025 Ark. App. 246. The statute of limitations remained tolled until May 23, 2025, when the mandate issued. *See State of Arkansas v. Green*, No. 58CR-16-72. The statute of limitations expired one year later, on May 26, 2026. *See* Fed. R. Civ. P. 6(a)(1)(C) (excluding Saturdays, Sundays, and legal holidays from time

computations when they mark the end of the relevant period). Mr. Green's Petition was filed six days later on June 1, 2026.

Rule 3(d) of the Rules Governing Section 2254 Cases in the United States District Courts sets out what is known as the prison mailbox rule:

> A paper filed by an inmate confined in an institution is timely if deposited in the institution's internal mailing system on or before the last day for filing. If an institution has a system designed for legal mail, the inmate must use that system to receive the benefit of this rule. Timely filing may be shown by a declaration in compliance with 28 U.S.C. § 1746 or by a notarized statement, either of which must set forth the date of deposit and state that first-class postage has been prepaid.

It is not clear from the record whether Mr. Green used the Pope County Detention Center's internal mailing system to send off his Petition, or whether he used the "system designed for legal mail," assuming the detention center has one. It is clear that he failed to include the required declaration or notarized statement; instead, he included a certificate of service stating only that his Petition was "mailed to the Arkansas Attorney General's Office" on April 23, 2026. (Doc. No. 1 at 6.) Obviously, mailing the Petition to the Attorney General's Office is not sufficient for purposes of filing. Nonetheless, two separate envelopes attached to Mr. Green's Petition show a postmark of May 26, 2026 – the last day for filing. It is impossible to tell which parts of Mr. Green's Petition arrived in which envelope.[1]

Because Mr. Green failed to comply with the technical requirements of Rule 3(d), his Petition is probably time-barred. However, given the lack of clarity in the record and the very small number of days at issue – and giving Mr. Green, a *pro se* litigant, all benefit of the doubt – I will address Respondent's other arguments for dismissal.

**B. Procedural Default**

---

[1] Mr. Green's Petition was initially filed in the United States District Court for the Western District of Arkansas. It was later transferred here. (Doc. No. 3.)

Before filing a federal habeas petition, a state inmate must first "fairly present" the substance of his or her federal habeas claims to the appropriate state courts and exhaust all available state remedies. *Murphy v. King*, 652 F.3d 845, 848-49 (8th Cir. 2011) (citing *Baldwin v. Reese*, 541 U.S. 27, 29 (2004); 28 U.S.C. § 2254(b)(1)(A) ("An application for a writ of habeas corpus . . . shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State")). The fair-presentment requirement exists so that the respective state has the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Murphy*, 652 F.3d at 849 (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995)); *see also Picard v. Connor*, 404 U.S. 270, 275 (1971) (quoting *Darr v. Burford*, 339 U.S. 200, 204 (1950)) ("We have consistently adhered to this federal policy, for 'it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation.'"); *Lenza v. Wyrick*, 665 F.2d 804, 807-08 (8th Cir. 1981). A petitioner must present his federal claims to the state courts "in a timely or procedurally correct manner in order to provide the state courts an opportunity to decide the merits of those claims." *Kennedy v. Delo*, 959 F.2d 112, 115 (8th Cir. 1992). When a state inmate fails to comply with the fair-presentment requirement, his or her claim will be procedurally defaulted. *Murphy*, 652 F.3d at 849.

Mr. Green's Petition makes two due-process claims. He contends the dismissal of his underlying charges in state court "demonstrates the weakness of the State's case and calls into question the reliability of the testimony used at the revocation hearing." (Doc. No. 1 at 5.) And he argues the denial of Rule 37 relief without a hearing deprived him of a full and fair opportunity to develop his claims. (*Id.*) Neither of these claims was presented in state court. Therefore, both are procedurally defaulted.

When a state prisoner has defaulted his or her federal claims in state court, federal habeas review of the claims is barred unless the prisoner can demonstrate: (1) "cause for the default and actual prejudice as a result of the alleged violation of federal law"; or (2) "that failure to consider the claims will result in a fundamental miscarriage of justice," that is, a constitutional violation has resulted in the conviction and continued incarceration of one who is actually innocent. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). The cause-and-prejudice exception requires a showing of "some objective factor external to the defense" that impeded development of the claim in state court. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Mr. Green does not identify any such impediment. The miscarriage-of-justice exception is likewise inapplicable. A petitioner who raises a gateway claim of actual innocence must establish (1) new and reliable evidence that was not presented at trial, and (2) in light of the new evidence, it is more likely than not that no reasonable juror would have convicted him. *Weeks v. Bowersox*, 119 F.3d 1342, 1351 (8th Cir. 1997). Mr. Green does not begin to cross the very high threshold of an actual-innocence gateway claim, as he does not point to any new evidence.[2] Accordingly, both of Mr. Green's due-process claims are inexcusably procedurally barred.

**C. Merits**

**1. Ineffective Assistance of Counsel**

Under AEDPA, and in the interests of finality and federalism, federal habeas courts are restricted to a "limited and deferential review of underlying state court decisions." *Sera v. Norris*, 400 F.3d 538, 542 (8th Cir. 2005); *Ryan v. Clarke*, 387 F.3d 785, 790 (8th Cir. 2004). Federal

---

[2] Moreover, to the extent Mr. Green's due-process claim regarding the dismissal of his state charges includes an ineffective-assistance-of-counsel component, the procedural default is not excused under *Martinez v. Ryan*, 566 U.S. 1 (2012). As set out below, an ineffective-assistance claim would not be a substantial one because it lacks merit. *Id*. at 14.

courts may not grant habeas relief on a claim that was adjudicated on the merits in state court unless the adjudication of the claim

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see also Rompilla v. Beard*, 545 U.S. 374, 380 (2005). Under subsection (d)(1), a state court decision is "contrary to" federal law if the state court arrives "at a conclusion opposite to that reached by [the United States Supreme Court] on a question of law or if the state court decides a case differently than [the United States Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000); *see also Collier v. Norris*, 485 F.3d 415, 421 (8th Cir. 2007). A state court decision involves an "unreasonable application" of federal law when the state court "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. Under subsection (d)(2), a state court decision is based on an "unreasonable determination of the facts" "only if it is shown by clear and convincing evidence that the state court's presumptively correct factual findings do not enjoy support in the record." *Lomholt v. Iowa*, 327 F.3d 748, 752 (8th Cir. 2003); *see also* 28 U.S.C. § 2254(e)(1) (a state court's factual finding shall be presumed to be correct, and the applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence).

The Arkansas Court of Appeals adjudicated Mr. Green's ineffective-assistance-of-counsel claims on their merits. *Green*, 2025 Ark. App. 246. The appellate court correctly identified the governing legal principle as *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, a claim of ineffective assistance of counsel has two components: (1) that counsel's performance was

deficient, resulting in errors so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment; and (2) that the deficient performance prejudiced the defense, depriving the defendant of a fair trial. 466 U.S. at 687. The deficient-performance component requires that a defendant show counsel's representation fell below an objective standard of reasonableness. *Id*. at 687-88. The prejudice component requires that a defendant establish a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id*. at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id*. Unless a defendant makes both showings, it cannot be said that the conviction resulted from a breakdown in the adversary process that renders the result unreliable. *Id*. at 687.

Judicial scrutiny of counsel's performance must be highly deferential. *Id*. at 689. A court must indulge a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id*. (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). Taking § 2254(d) and *Strickland* together, habeas review of a state court's decision must be "doubly deferential": "We take a 'highly deferential' look at counsel's performance, *Strickland*, [466 U.S. at 689], through the 'deferential lens of § 2254(d),' [*Knowles v.] Mirzayance*, [556 U.S. 111, 121, n.2]." *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011); *see also Abernathy v. Hobbs*, 748 F.3d 813, 817 (8th Cir. 2014).

Applying *Strickland* and its presumption of reasonableness, the Arkansas Court of Appeals rejected Mr. Green's claims that his counsel was ineffective, holding as follows:

> Essentially, Green makes conclusory assertions of prejudice from failures to highlight the kind of discrepancies that are expected even when all witnesses are

> telling the truth. Disorderly events are hard to describe in an orderly way, even when just one person describes them just one time. Counsel is allowed great leeway in making strategic and tactical decisions. *Nichols [v. State of Arkansas]*, [2017 Ark. 129, 517 S.W.3d 404 (per curiam)]. If counsel decided not to belabor whether Green had "a raised tone in his voice" with McClatchey, as she testified, or "yelled at her," as Peters told a police officer, we could not fault her. This is not a difference in testimony about who shot John. One person's "raised tone" is another person's "yell." The same is true for the alleged failure to litigate whether Peters had entered the repose room when he first encountered Green, as someone told police, or merely stood at the threshold, as Peters himself testified. The court found this was a "minor point of contention, with no real substance." That was true of most of the failure-to-impeach allegations.
>
> This was a bench trial under a preponderance-of-evidence standard where proof of even one violation would sustain the decision to revoke Green's suspended sentence. *Green*, [2023 Ark. App. 199]. On the facts material to the disorderly-conduct finding, the witnesses sang in harmony, if not unison. The circuit court did not clearly err by finding none of the points merited even a hearing.
>
> Finally, Green argues his counsel should have objected to Peters's testimony that he Googled Green after the incident at the funeral and was afraid when he saw Green drive by his house two days later. Because we affirm on the other issues, our decision about this one wouldn't change the outcome.

*Green*, 2025 Ark. App. 246, 5.

Mr. Green does not allege this decision was contrary to or involved an unreasonable application of federal law or that it was based on an unreasonable determination of the facts. He does not point to any conflicting federal law or any error of fact; he merely makes the same conclusory assertions of prejudice he made in state court, without any factual or legal support. As the appellate court concluded, the discrepancies in testimony Mr. Green points to are simply too insignificant to show the result might have been different had counsel highlighted them. *See Henderson v. Norris*, 118 F.3d 1283, 1287 (8th Cir. 1997) ("Courts generally entrust cross-examination techniques, like other matters of trial strategy, to the professional discretion of counsel.") And, as Respondent points out, an objection to Peters's testimony regarding his fear of Mr. Green would not have been a successful one, as the rules of evidence did not apply in the

revocation hearing. *Foster v. State of Arkansas*, 2023 Ark. App. 157, 5, 661 S.W.3d 743, 746 (citing Ark. R. Evid. 1101(b)(3)). Mr. Green's counsel cannot be deemed ineffective for failing to advance a meritless argument. *Rodriguez v. United States*, 17 F.3d 225, 226 (8th Cir. 1994) (per curiam). Taking a highly deferential look at counsel's performance as required by *Strickland* through the likewise deferential lens of § 2254(d), the appellate court's decision is consistent with federal law. *See Cullen*, 563 U.S. at 190. Mr. Green is not entitled to relief on these claims.

**2. Due Process**

Even if Mr. Green had not defaulted his due-process claims, they would also be meritless. The dismissal of his underlying criminal charges did not, as Mr. Green contends, demonstrate deficiencies in the State's case for revocation. (Doc. No. 1 at 5.) Arkansas law is clear: evidence that may be insufficient to sustain a criminal conviction may be sufficient for the revocation of a suspended sentence, which requires only proof by a preponderance of the evidence. *See, e.g.*, *Phounsavath v. State of Arkansas*, 2016 Ark. App. 65, 3, 482 S.W.3d 332, 334; Ark. Code Ann. § 16-93-308(d). And Mr. Green's counsel cannot be deemed ineffective for failing to make the meritless argument that dismissal of the criminal charges rendered the evidence insufficient for revocation.

As for Mr. Green's claim that the denial of an evidentiary hearing on his Rule 37 claims violated due process, the trial court found that the petition and record conclusively showed Mr. Green was not entitled to relief. (Doc. No. 9-5 at 12.) Accordingly, under Rule 37.3, no hearing was required. Moreover, "[t]he decision whether to hold an evidentiary hearing in state court does not implicate federal law or the United States Constitution. It is a challenge to state procedure, not state custody." *Eason v. Hobbs*, No. 5:11-cv-00336-BD, 2012 WL 1790117, at 2

(E.D. Ark. 2012) (citing *Sweet v. Delo*, 125 F.3d 1144, 1151 (8th Cir. 1997); 28 U.S.C. § 2254(a)). Therefore, Mr. Green's claim falls outside the realm of federal habeas review.

For all these reasons, Mr. Green is not entitled to relief. The Petition for Writ of Habeas Corpus must be dismissed with prejudice.

## IV. CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, a district court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). I find no issue on which Mr. Green has made a substantial showing of the denial of a constitutional right. Accordingly, no certificate of appealability will issue.

## V. CONCLUSION

IT IS, THEREFORE, ORDERED that:

1. Mr. Green's § 2254 Petition for Writ of Habeas Corpus (Doc. No. 1) is DISMISSED with prejudice.

2. A certificate of appealability will not be issued.

DATED this 2nd day of September 2026.

JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE